UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES—GENERAL**

Case No.** CV-11-10122 MWF (PLAx)
      CV-13-03244 MWF (PLAx)
      CV-13-03246 MWF (PLAx)                    Date: May 16, 2013

Title:    Uniloc Luxembourg S.A. v. Compulink Business Systems, Inc. et al.
          Uniloc Luxembourg SA et al v. eClinical Works LLC
          Uniloc Luxembourg SA et al v. Pulse Systems Inc

Present: The Honorable MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

| Rita Sanchez | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter/Recorder | Tape No. |

Attorneys Present for Plaintiff:         Attorneys Present for Defendants:
         Not Present                                 Not Present

**Proceedings (In Chambers):** ORDER CONSOLIDATING CASES, GRANTING MOTION TO DISMISS COMPLAINT FOR LACK OF STANDING [100], DENYING MOTIONS AS MOOT [118, 119, 125]

This matter is before the Court on Defendants' Motion to Dismiss Complaint for Lack of Standing ("Motion"). (Docket No. 100). Having considered the parties' submissions and arguments at the hearing held on May 6, 2013, the Court GRANTS the Motion.

**I.     MOTION TO DISMISS**

The current plaintiff in this action is Uniloc Luxembourg S.A. ("Uniloc"). The initial plaintiff, Medsquire, LLC ("Medsquire"), commenced this action on December 6, 2011. Defendants argue that Medsquire lacked standing to sue for infringement of U.S. Patent No. 5,682,526 ("'526 Patent"), on that date. Therefore, according to Defendants, the action must be dismissed for lack of standing. Dissecting the document establishing Medsquire's rights in the '526 Patent, Defendants argue that Medsquire was not vested with title to the '526 Patent and did not own all substantial rights such that it had standing to sue on December 6, 2011. Uniloc argues in response that the '526 Patent was properly assigned to Medsquire because all substantial rights were transferred to Medsquire before the action commenced. Therefore, according to Uniloc, Medsquire had standing to sue to enforce the '526 Patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

## CIVIL MINUTES—GENERAL

Case No.   CV-11-10122 MWF (PLAx)          Date:  May 16, 2013
Title:     Uniloc Luxembourg S.A. v. Compulink Business Systems, Inc. et al.

The Court GRANTS Defendants' and Plaintiff's unopposed Requests for Judicial Notice.  (Docket Nos. 100-1, 109).  The Patent Assignment and Revenue Share Agreement Between Medsquire, LLC and Spacelabs Healthcare, Inc., effective January 27, 2011 ("Agreement") and the Patent Purchase Agreement are not subject to reasonable dispute and are the proper subjects of judicial notice.

The parties do not dispute that standing is properly assessed on the date on which a suit is commenced or that the Agreement governed Medsquire's rights in the '526 Patent on the date that Medsquire filed suit.

The Agreement purported to assign title in the '526 Patent to Medsquire, giving Medsquire the right to prosecute actions for infringement in its own name, contingent on certain factors.  (Agreement ¶¶ 1, 1.2, 2.3).  First, Medsquire was required to notify Spacelabs and provide an opportunity to object to proposed litigation fourteen days prior to filing suit.  (*Id.* ¶ 2.4).  Any objection within fourteen days by Spacelabs was "final, conclusive and binding".  (*Id.* ¶ 2.4).  In other words, if Spacelabs disapproved of litigation in a particular situation, Medsquire could not proceed.  Second, the Agreement specified a list of third parties against whom Medsquire could not seek to enforce the terms of the '526 Patent without Spacelabs' prior consent.  (*Id.* ¶ 2.4).  The Agreement did not specifically address whether Spacelabs could initiate litigation alone, in its own name.

While Medsquire was entitled to sell its interest in the '526 Patent, any such sale was contingent on Spacelabs' prior written consent.  (*Id.* ¶ 2.1).  If Medsquire sought to practice inventions covered by the claims of the '526 Patent, the Agreement only specified that the parties would negotiate in good faith about proper compensation due to Spacelabs.  (*Id.* ¶ 2.2).  Hence, no contract existed allowing Medsquire to practice the covered inventions.  Medsquire was further required to maintain the '526 Patent.  (*Id.* ¶ 2.8).  But, should Medsquire decline to maintain the '526 Patent or seek to sell the '526 Patent, Medsquire was obligated to assign its rights back to Spacelabs at Spacelabs' election.  (*Id.* ¶ 2.9).  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES—GENERAL**

Case No.   CV-11-10122 MWF (PLAx)          Date:  May 16, 2013
Title:     Uniloc Luxembourg S.A. v. Compulink Business Systems, Inc. et al.

Agreement also precluded Medsquire from assigning its rights to another party without Spacelabs' consent. (*Id.* ¶ 8.7).

In exchange, the Agreement provided that Spacelabs would receive 50% of revenues "generated from the enforcement, assignment, licensing, commercialization, exploitation, use, practice, and/or sale of any of the" '526 Patent. (*Id.* ¶ 2.1). Failure by Medsquire to make sufficient payments triggered a duty by Medsquire to assign its rights back to Spacelabs. (*Id.* ¶ 2.10). The Agreement also preserved Spacelabs' ability to practice inventions covered by the claims of the '526 Patent (*id.* ¶ 1.3) and to develop new, related patents. (*Id.* ¶ 1.2).

The questions presented by the parties are: (1) whether the Agreement constituted an assignment of formal legal title under patent law and, if not, (2) whether the Agreement vested Medsquire with "all substantial rights" in the '526 Patent such that the exclusive license was tantamount to an assignment. *See Propat Int't Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007) (standing is conferred to patentee, successor in title to the patentee, or transferee/licensee possessing all substantial rights in the patent). But these questions are not actually analytically distinct. Whether the Agreement constituted an assignment (a legal transfer of title) or an exclusive license depends on the same inquiry – whether the Agreement substantively conferred enough rights to Medsquire to constitute ownership by Medsquire. In both cases, the answer under Federal Circuit precedent is no.

With regard to title, Uniloc relies on the first paragraph of the Agreement and various subsection headings to argue that the Agreement constituted an assignment by transferring to Medsquire Spacelabs' "entire worldwide right, title and interest in and to [Spacelabs'] Patents, including the entire worldwide right, title and interest in and to any reexamination or reissue of the Patents." (*Id.* ¶ 1.2). But patent law is clear that the substance of a contractual arrangement governs its effect instead of its label. *Waterman v. MacKenzie*, 138 U.S. 252, 256, 11 S.Ct. 334, 34 L.Ed. 923 (1891) ("WHETHER A TRANSFER OF A PARTICULAR RIGHT OR interest under a patent is an assignment or a license does not depend

---

**CIVIL MINUTES—GENERAL**                                                    3

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES—GENERAL**

| | | |
|---|---|---|
| Case No. | CV-11-10122 MWF (PLAx) | Date: May 16, 2013 |
| Title: | Uniloc Luxembourg S.A. v. Compulink Business Systems, Inc. et al. | |

upon the name by which it calls itself, but upon the legal effect of its provisions.") (emphasis in original).

The substance of the Agreement and the degree of control retained by Spacelabs undermines the contention that an assignment of title occurred. *See, e.g., Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (although "agreement effected a broad conveyance of rights to Abbott, Diamedix retained substantial interests . . . ." rendering the transfer a license, not an assignment). This is explored in greater detail below. Moreover, Uniloc cites no legal authority for its contention that Spacelabs' reservations of rights were merely covenants, and, more importantly, it cites no authority to render that distinction meaningful. Rather than an unencumbered transfer of title, the Agreement functioned as a license and must be assessed as such.

An exclusive license may confer standing to the licensee where it is tantamount to an assignment because it confers a significant enough portion of the bundle of rights secured by a patent to constitute legal ownership. *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) ("To determine whether an exclusive license is tantamount to an assignment, we 'must ascertain the intention of the parties [to that license agreement] and examine the substance of what was granted.'") (citation omitted, alteration in original). Simply, an exclusive licensee may have independent standing to enforce a patent when it obtains all substantial rights in the patent. *Propat*, 573 F.3d at 1189 (explaining standing when formal legal title is not transferred).

The Federal Circuit has identified relevant (but non-exhaustive) considerations in assessing whether an exclusive licensee holds all substantial rights in a patent. *Mann Foundation*, 604 F.3d at 1360-61. Elements identified as substantial include the right to make, use, and sell products under the patent, and:

> the scope of the licensee's right to sublicense, the nature of license
> provisions regarding the reversion of rights to the licensor
> following breaches of the license agreement, the right of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES—GENERAL**

Case No.   CV-11-10122 MWF (PLAx)           Date:  May 16, 2013
Title:     Uniloc Luxembourg S.A. v. Compulink Business Systems, Inc. et al.

> licensor to receive a portion of the recovery in infringement suits
> brought by the licensee, the duration of the license rights granted
> to the licensee, the ability of the licensor to supervise and control
> the licensee's activities, the obligation of the licensor to continue
> paying patent maintenance fees, and the nature of any limits on
> the licensee's right to assign its interests in the patent.

*Id.  See also Propat*, 473 F.3d at 1191 ("The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant . . . all substantial rights under the patent.").

Another (critical) substantial right concerns the licensee's ability to control enforcement litigation.  *See Mann Foundation*, 604 F.3d at 1362 ("Such a broad [retained] right to decide whether to bring suit and to control litigation is thoroughly inconsistent with an assignment of the patents-in-suit."); *see also Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) (all substantial rights were not transferred to licensee where licensor retained right to veto litigation and limit assignment of licensee's interest).

Along with *Mann*, the decision in *Propat,* 473 F.3d at 1190-91, demonstrates that there is no standing under the Federal Circuit case law.  The licensee in *Propat* had the power to sublicense but could not assign its rights without the licensor's consent.  *Id.* at 1190.  The subject agreement further provided the licensor with a financial stake in the licensee's enforcement efforts.  The Federal Circuit concluded that the licensee did not have enforcement standing because the licensor (1) maintained the patent; (2) retained an economic interest in the patent rights; (3) retained a right to veto license and litigation decisions; (4) retained a right to veto transfers of the licensee's rights; and (5) retained a right of reversion in certain circumstances.  *Id.* at 1191.  The Federal Circuit observed that, "[i]n no case has this court held that a patentee who retains such broad and wide-ranging powers with respect to a patent has nonetheless transferred 'all substantial rights' in the patent." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.   CV-11-10122 MWF (PLAx)            Date:  May 16, 2013
Title:     Uniloc Luxembourg S.A. v. Compulink Business Systems, Inc. et al.

   The rights transferred to Medsquire by the Agreement were insufficient to convey independent standing to enforce the '526 Patent because Spacelabs retained extensive and dispositive rights touching on most of the factors delineated by the Federal Circuit.  Medsquire's ability to assign its interests or sell the '526 Patent were fundamentally within Spacelabs' control.  Crucially, Spacelabs functionally controlled all litigation to enforce the '526 Patent by retaining the right to block any litigation for any reason whatsoever.  Spacelabs retained broader litigation rights than the licensor in *Propat*; the licensor in that case could not unreasonably withhold its approval of litigation targets.  *Id.* at 1190.  Spacelabs was subject to no such restriction and could withhold approval for any reason.

   The only factor militating in favor of a finding of sufficient ownership is the fact that the Agreement required Medsquire to maintain the '526 Patent.  But failure to do so resulted in an obligation to assign its rights back to Spacelabs or its chosen affiliate.

   The Agreement thus thoroughly and conclusively circumscribed Medsquire's conduct and ability to enforce and alienate the '526 Patent.  Because Medsquire was neither in control of the '526 Patent's enforcement nor was it vested with the power to dispose of the '526 Patent as it saw fit under the Agreement, it cannot be concluded that Medsquire was an owner of the patent under the law at the time this lawsuit was filed.

   Tellingly, Uniloc cites no analogous precedent in which any court has found that a similar bundle of rights constituted ownership for the purposes of patent standing.  Cases in which the Federal Circuit has found standing on behalf of a licensee are easily distinguishable because the subject agreements transferred far broader rights than were given to Medsquire.  For example, in *Vaupel*, the licensee held an unfettered right to sue for enforcement of the subject patent.  *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) (concluding that all substantial rights were transferred).  The *Speedplay* court similarly held that all substantial rights were transferred by an agreement that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV-11-10122 MWF (PLAx) | Date: May 16, 2013 |
| Title: | Uniloc Luxembourg S.A. v. Compulink Business Systems, Inc. et al. | |

provided the licensee with complete control of enforcement litigation and the unconstrained ability to transfer its rights to others. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1252 (Fed. Cir. 2000) (concluding licensor retained no substantial rights).

Uniloc's arguments about contractual intent are unavailing. The parties' intent is fairly clear – Spacelabs attempted to maintain ultimate control and substantive ownership of the '526 Patent while attempting to vest Medsquire with a limited power to sue infringers. But contractual intent does not undermine the requirements of standing as enunciated by the Federal Circuit. Without sufficient indicia of ownership, Medsquire cannot suffer an independent injury such that it has standing to pursue claims in its own name. In other words, Medsquire and Spacelabs cannot contract around justiciability.

Accordingly, the Court finds that Medsquire did not have independent standing to sue for enforcement of the '526 Patent in its own name on the date that this suit was commenced.

## II. CONSOLIDATION OF RELATED CASES

After argument on this Motion, plaintiff Uniloc and its corporate affiliate, Uniloc USA, Inc., filed separate actions against defendants eClinical Works LLC and Pulse Systems, Inc. *See* Case Nos. CV13-3244 and CV13-3246. The Court held a telephonic conference and the cases were addressed.

Given the nature of the recently-filed cases, the Court concludes they are appropriately consolidated with the present case, and that all current deadlines shall remain binding. As the Court and the parties discussed, the dismissal renders MOOT the pending Motion to Intervene in Case Number CV11-10122. (Docket No. 110). The pending Amended Motion to Continue the Trial and to Immediately Suspend all Remaining Deadlines of the Scheduling Order is DENIED WITHOUT PREJUDICE, as it was filed in CV11-10122-MWF (PLAx) and that case will be closed with this order. (Docket Nos. 120, 125, 129). To the extent that this motion remains necessary, it must be filed in CV13-3244-MWF (PLAx) so that the docket

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES—GENERAL**

| | |
|---|---|
| Case No.   CV-11-10122 MWF (PLAx) | Date:  May 16, 2013 |
| Title:        Uniloc Luxembourg S.A. v. Compulink Business Systems, Inc. et al. | |

is preserved and accurate. The Court's approval of the Application to File Under Seal (Docket No. 132) applies to the re-filing of the Amended Motion to Continue in CV13-3244-MWF (PLAx). Because June 10, 2013 is a closed motion day, Defendant shall notice the Amended Motion for June 17, 2013 or any other open motion day agreed to by counsel.

All discovery matters are referred to the assigned magistrate judge. The Court recognizes that only it has the power to modify scheduling orders, but expects to follow any recommendation by the magistrate judge to address alterations necessitated by the recent consolidation and the discovery disputes referenced at the hearings.

### III.    CONCLUSION

Case Numbers CV13-3244-MWF (PLAx) and CV13-3246 (PLAx) are hereby CONSOLIDATED with Case Number CV11-10122-MWF (PLAx). The present Motion in CV11-10122 is GRANTED and that action is dismissed without prejudice. (Docket No. 100). The Motion to Intervene in Case Number CV11-10122-MWF (PLAx) is DENIED AS MOOT. (Docket No. 110). The Amended Motion to Continue the Trial and to Immediately Suspend all Remaining Deadlines of the Scheduling Order is DENIED WITHOUT PREJUDICE. (Docket Nos. 120, 125, 129).

Going forward, the parties shall make all filings in Case Number CV13-3244-MWF (PLAx). The scheduling order in Case Number CV11-10122-MWF (PLAx) is deemed binding in Case Number CV13-3244-MWF (PLAx) unless the Court orders otherwise following a recommendation from the magistrate judge. (Docket No. 48).

IT IS SO ORDERED.